UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANHEUSER-BUSCH COMPANIES PENSION PLAN, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 4:15 CV 1005 CDP |
| BETH A. LAENEN, et al., | ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Beth A. Laenen and her husband, Frank Laenen, divorced in November 2010. Frank[1] remarried in August 2011. He died in February 2012. At the time of his death, Frank was a participant in the Anheuser-Busch Companies Pension Plan. In this ERISA interpleader action, Beth claims that she is entitled to one-half of Frank's Plan benefits under the terms of a qualified domestic relations order (QDRO) entered March 16, 2015. Frank's surviving spouse, Jennifer R. Laenen, disagrees and contends that Beth is entitled to no Plan benefits given the plan administrator's determination that the domestic relations order is not qualified under ERISA. Jennifer now seeks to limit discovery in this action, arguing that Beth's discovery requests relating to Frank and Beth's November 2010 Separation Agreement are irrelevant to the disposition of this case. At this stage of the

---

[1] Because the individuals in this case all share the surname "Laenen," I will refer to them by their first names in this memorandum. No disrespect is intended.

proceedings, I will grant Jennifer's motion to limit discovery, but without prejudice to Beth's seeking such discovery if and when it becomes relevant to the action. Jennifer's separate motion to dismiss Beth's claims for lack of jurisdiction will be denied.

**Background**

On November 12, 2010, the Circuit Court of Franklin County, Missouri, entered a Judgment of Dissolution of Marriage, dissolving the 30-year marriage of Frank and Beth Laenen. The Judgment incorporated the terms of Frank and Beth's Separation Agreement, which included a provision that Beth receive one-half of Frank's pension upon his retirement, "unless [Beth] remarries."[2]

In March 2015, after extensive State court litigation, the Franklin County Circuit Court entered an order "intended to constitute a Qualified Domestic Relations Order" relating to "the provision of marital property rights to [Beth] as a result" of the November 2010 Judgment.[3] As is relevant to this action, the order assigned to Beth "an amount equal to 50% of [Frank's] Accrued Benefit under the Plan as of November 12, 2010, so long as [Beth] remains unmarried."[4] This order was submitted to the plan administrator for approval, but the administrator determined it not to be "qualified" under ERISA given that 1) Beth's status under the order was as a "conditional" alternate payee, dependent on future marital

---

[2] J. Laenen Countercl./Cross-cl. - Exh. B, ECF #9-3 at p. 12 (Sep. Agrmt., Exh. A).
[3] *Id.*, Exh. G, ECF #9-8 at pp. 1, 2.
[4] *Id.* at p. 2.

status; 2) the order required the plan administrator to continually monitor Beth's marital status and make ongoing determinations as to benefit entitlement; and 3) the order did not specify the number of payments or the time period to which the order applied, given the open-ended condition and need for ongoing monitoring of Beth's marital status.

Both Beth and Jennifer made claims to the Plan for payment of Frank's Plan benefits – with Beth seeking half of the Plan benefits accrued as of November 12, 2010, and Jennifer seeking all of the benefits. Given these conflicting claims, the Plan brought this action in interpleader requesting the Court to determine who is entitled to the benefits and to "enter an order that is qualified under ERISA."[5] Beth and Jennifer have each filed counterclaims against the Plan and crossclaims against each other, each asserting that she is entitled to her respective portion of the Plan benefits and requesting that I award the benefits accordingly. In addition, Beth also requests that I enter a QDRO enforcing the Plan's payment to her of benefits equal to fifty-percent of Frank's benefits accrued under the Plan as of November 12, 2010.

## Discussion

My initial role here is limited to determining whether the plan administrator properly decided that the March 2015 order was not "qualified" and thus not a QDRO enforceable under ERISA. Because the administrator's decision involved

---
[5] Compl., ECF #1 at para. 28.

interpretation of the circuit court's order and did not require an interpretation of the Plan's terms, my review of the administrator's decision is *de novo*. *Hogan v. Raytheon, Co.*, 302 F.3d 854, 856 (8th Cir. 2002). Therefore, I must determine whether, in fact, the March 2015 order is a QDRO under ERISA.

For a former spouse to have an enforceable interest in a participant's ERISA-qualified plan, there must be a qualified domestic relations order (QDRO) in place. A QDRO is an express statutory exception to the anti-alienation provisions required for pensions governed by ERISA. 29 U.S.C. § 1056(d)(1).

> A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan. A domestic relations order, in turn, is any judgment, decree, or order that concerns the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant and is made pursuant to a State domestic relations law (including a community property law). A domestic relations order must meet certain requirements to qualify as a QDRO.

*Boggs v. Boggs*, 520 U.S. 833, 846 (1997) (internal quotation marks and citations omitted). If a domestic relations order is determined to be qualified as a QDRO under ERISA, the affected plan is obligated to comply with its terms. 29 U.S.C. § 1056(d)(3)(A) ("Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.").

"The primary responsibility for determining whether a [domestic relations

order] is a QDRO rests with the plan itself." *Green v. AT & T, Inc.*, No. 4:07 CV 1537 DDN, 2009 WL 1161576, at *11 (E.D. Mo. Apr. 29, 2009) (citing 29 U.S.C. § 1056(d)(3)(G); *Trustees of the Dir.'s Guild of Am.-Producer Pension Benefits Plans*, 234 F.3d 415, 420 (9th Cir. 2000)). In making this determination, a plan is not permitted "to look beneath the surface of the order." *Blue v. UAL Corp.,* 160 F.3d 383, 385 (7th Cir. 1998). "Whether a domestic relations order qualifies as a QDRO depends on the language of the order itself; the subjective intentions of the parties are not controlling." *Hawkins v. Comm'r of Internal Revenue*, 86 F.3d 982, 989-90 (10th Cir. 1996) (citing *Comm'r of Internal Revenue v. Lester,* 366 U.S. 299, 304-05 (1961)).[6] *See also Smith v. Estate of Smith*, 248 F. Supp. 2d 348, 355 (D.N.J. 2003).

With *de novo* review of the plan administrator's decision here, I am likewise in the position of determining whether this domestic relations order is a QDRO. Indeed, ERISA itself contemplates this circumstance. 29 U.S.C. § 1056(d)(3)(H)(i) (addressing action to be taken by plan administrator during period in which issue of whether domestic relations order is a QDRO is being determined "by the plan administrator, *by a court of competent jurisdiction,* or otherwise")

---

[6] In *Hawkins,* the court reviewed a lower court's determination of whether a domestic relations order qualified as a QDRO under 26 U.S.C. § 414(p) – the federal tax code – which recognizes that distributions of pension funds following divorce to an alternate payee under a valid QDRO constitutes an exception to the general rule that the "distributee" for tax purposes is the plan participant. Because a valid QDRO under the tax code is defined in identical terms as that under ERISA, *compare* 26 U.S.C. § 414(p)(1)-(3) *with* 29 U.S.C. § 1056(d)(3)(B)-(D), I find the *Hawkins* court's discussion applicable to the issue here. *See also Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1155 n.10 (9th Cir. 2000).

(emphasis added); *see also Green*, 2009 WL 1161576, at *11.  Given that my review is *de novo*, Beth argues that resolution of this question will involve my consideration of the parties' intent underlying the November 2010 Separation Agreement, thereby making discovery relating to this intent relevant to this action. As with plan administrators, however, I am not permitted to look beyond the terms of the domestic relations order when determining whether it is a QDRO.

To be considered a "qualified" domestic relations order under ERISA, the order must "clearly" specify:

> (i)  the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii)  the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii)  the number of payments or period to which such order applies, and
>
> (iv)  each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C).  In addition, the order can be considered a QDRO "only if" it:

> (i)  does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
>
> (ii)  does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
>
> (iii)  does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another

order previously determined to be a qualified domestic relations order. 29 U.S.C. § 1056(d)(3)(D). To be an enforceable QDRO, all of these specific criteria must be met.

Inquiring into the intent of the parties to determine whether an order meets the specificity requirements of § 1056(d)(3)(C) and (D) would defeat ERISA's purpose of establishing these requirements in the first place.[7] Relaxing these specificity requirements to permit inquiry into and correspondingly weigh the parties' underlying intentions could result in "even the most facially inadequate order . . . theoretically qualify[ing] as a QDRO[.]" *Hawkins*, 86 F.3d at 992. In such a situation, a domestic relations order that makes no mention of the facts required to be specified "clearly" under § 1056(d)(3)(C) could nonetheless constitute a QDRO because either a plan administrator or a court independently obtained such facts. I am aware of no authority demonstrating that Congress intended that the precise requirements of § 1056(d)(3)(C) and (D) could be disregarded in favor of conducting *ad hoc* subjective inquiries into what parties intended when drafting divorce agreements. *Cf. Hawkins*, 86 F.3d at 992.

Therefore, in determining whether the Franklin County Circuit Court's

---

[7] "The statutory language is explicit and emphatic. The purpose is to reduce the expense of ERISA plans by sparing plan administrators the grief they experience when because of uncertainty concerning the identity of the beneficiary they pay the wrong person, or arguably the wrong person, and are sued by a rival claimant." *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir. 1994). *See also Day v. Wall*, 112 F. Supp. 2d 833, 839 (E.D. Wis. 2000) ("Congress's intent was to establish clear rules governing the duties of pension plans and prevent plans from making discretionary decisions in this area or looking beneath the surface of QDROs.") (citing *Blue,* 160 F.3d at 385).

March 2015 order is a QDRO under ERISA, I will not look beyond the order to Frank and Beth's intentions when they drafted their Separation Agreement in November 2010. Jennifer's motion to limit discovery in this regard will therefore be granted. I am aware that there may be circumstances where a court must interpret the terms of a QDRO, at which time the intent of the parties may become relevant. *See Green*, 2009 WL 1161576, at *11. But that would only happen after and if the court determines that the order is, in fact, a QDRO. At the present stage of this litigation, I do not have before me an order that has been determined to be an enforceable QDRO or a plan administrator's action thereon. Therefore, while I will grant Jennifer's motion to limit discovery at this time, it is without prejudice to Beth's seeking such discovery if further proceedings demonstrate its relevance.

Finally, the parties do not dispute that I have federal subject-matter jurisdiction to determine the question of whether the March 2015 order is a QDRO under ERISA. Resolution of this question will determine the course of further proceedings in this case, including whether and to what extent Beth may pursue her counterclaim against the Plan and her crossclaim against Jennifer. Given the present status of this case, I am not convinced that I lack subject-matter jurisdiction over Beth's separate claims, as urged by Jennifer. Accordingly, I will deny Jennifer's motion to dismiss Beth's counterclaim and crossclaim.

Accordingly,

**IT IS HEREBY ORDERED** that Jennifer R. Laenen's Motion to Limit Discovery [32] is granted, but without prejudice to defendant Beth A. Laenen seeking such discovery if the parties' intent becomes relevant in further proceedings.

**IT IS FURTHER ORDERED** that Jennifer R. Laenen's Motion to Dismiss Defendant Beth Laenen's Counterclaim and Crossclaim for Lack of Subject Matter Jurisdiction [37] is denied without prejudice.

An Interim Scheduling Order governing the next phase of this case will be entered separately.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of July, 2016.