UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANHEUSER-BUSCH COMPANIES PENSION PLAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:15 CV 1005 CDP |
| BETH A. LAENEN, et al., | ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM AND ORDER

Beth A. Laenen and her husband, Frank Laenen, divorced in November 2010. Frank remarried in August 2011 and died in February 2012. At the time of his death, Frank was a participant in the Anheuser-Busch Companies Pension Plan. In this ERISA interpleader action, Beth claims that she is entitled to one-half of Frank's Plan benefits under the terms of a qualified domestic relations order (QDRO) entered March 16, 2015 in Missouri state court. Frank's surviving spouse, Jennifer R. Laenen, disagrees and contends that Beth is entitled to no Plan benefits given the plan administrator's determination that the March 2015 domestic relations order is not qualified under ERISA. The parties have now filed cross motions on whether the March 2015 Order is a QDRO under ERISA. I conclude that the March 2015 Order does not qualify as a QDRO under ERISA because it

does not clearly specify either the amount or percentage of benefits to be paid to Beth, or the number of payments to be made.

**<u>Background</u>**

On November 12, 2010, the Circuit Court of Franklin County, Missouri, entered a Judgment of Dissolution of Marriage, dissolving the 30-year marriage of Frank and Beth Laenen. The Judgment incorporated the terms of Frank and Beth's Separation Agreement, which included a provision that Beth receive "One-half (1/2) of [Frank's] pension upon [Frank's] retirement, unless [Beth] remarries." ECF No. 9-3 at 12.

At the time of Frank's death, he was married to Jennifer and no QDRO had been written instructing the Plan to direct a portion of Frank's pension to Beth. In 2013, against Jennifer's objection, the state court entered Beth's proposed QDRO granting her half of Frank's accrued pension as of their divorce. ECF No. 1-2 at 2. However, the Missouri Court of Appeals reversed and remanded, finding that the entered QDRO improperly modified the terms of the Separation Agreement in omitting the condition of Beth's marital status on her right to collect her share of Frank's pension. ECF No. 38-1 at 9. In March 2015, the Franklin County Circuit Court entered a new order (March 2015 Order) "intended to constitute a Qualified Domestic Relations Order" assigning to Beth "an amount equal to 50% of

[Frank's] Accrued Benefit under the Plan as of November 12, 2010, so long as [Beth] remains unmarried." ECF No. 9-8 at 2.

The March 2015 Order was submitted to the plan administrator for approval, but the administrator determined it not to be "qualified" under ERISA given that 1) Beth's status under the Order was as a "conditional" alternate payee, dependent on her future marital status; 2) the Order required the plan administrator to continually monitor Beth's marital status and make ongoing determinations as to benefit entitlement; and 3) the Order did not specify the number of payments or the time period to which the Order applied, given the open-ended condition and need for ongoing monitoring of Beth's marital status. ECF No. 1, ¶ 23.

Both Beth and Jennifer made claims to the Plan for payment of Frank's Plan benefits – with Beth seeking half of the Plan benefits accrued as of November 12, 2010, and Jennifer seeking all of the benefits. Given these conflicting claims, the Plan brought this action in interpleader requesting that the Court determine who is entitled to the benefits and to "enter an order that is qualified under ERISA." ECF No. 1, ¶ 28. Beth and Jennifer have filed counterclaims against the Plan and crossclaims against each other, each asserting that she is entitled to her respective portion of the Plan benefits and requesting that I award the benefits accordingly. Before me now is the question of whether the Franklin County Circuit Court's Order entered March 16, 2015, is a QDRO under ERISA.

## **Discussion**

For a former spouse to have an enforceable interest in a participant's ERISA-qualified plan, there must be a qualified domestic relations order (QDRO) in place. A QDRO is an express statutory exception to the anti-alienation provisions required for pensions governed by ERISA. 29 U.S.C. § 1056(d)(1).

> A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan. A domestic relations order, in turn, is any judgment, decree, or order that concerns the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant and is made pursuant to a State domestic relations law (including a community property law). A domestic relations order must meet certain requirements to qualify as a QDRO.

*Boggs v. Boggs*, 520 U.S. 833, 846 (1997) (internal quotation marks and citations omitted). If a domestic relations order is determined to be qualified as a QDRO under ERISA, the affected plan is obligated to comply with its terms. 29 U.S.C. § 1056(d)(3)(A).

"The primary responsibility for determining whether a [domestic relations order] is a QDRO rests with the plan itself." *Green v. AT & T, Inc.*, No. 4:07 CV 1537 DDN, 2009 WL 1161576, at *11 (E.D. Mo. Apr. 29, 2009) (citing 29 U.S.C. § 1056(d)(3)(G); *Trustees of the Dirs. Guild of Am.-Producer Pension Benefits Plans*, 234 F.3d 415, 420 (9th Cir. 2000)). In making this determination, a plan is not permitted "to look beneath the surface of the order." *Blue v. UAL Corp.*, 160

F.3d 383, 385 (7th Cir. 1998). "Whether a domestic relations order qualifies as a QDRO depends on the language of the order itself; the subjective intentions of the parties are not controlling." *Hawkins v. Comm'r of Internal Revenue*, 86 F.3d 982, 989-90 (10th Cir. 1996).[1]

My review of the plan administrator's decision that the March 2015 Order was not a QDRO enforceable under ERISA is *de novo* because that decision involved interpretation of the circuit court's order but not interpretation of the Plan's terms. *Hogan v. Raytheon*, Co., 302 F.3d 854, 856 (8th Cir. 2002). I must make my own determination as to whether this domestic relations order is a QDRO. Indeed, ERISA itself contemplates this circumstance. 29 U.S.C. §1056(d)(3)(H)(i) (addressing action to be taken by plan administrator during period in which issue of whether domestic relations order is a QDRO is being determined "by the plan administrator, *by a court of competent jurisdiction*, or otherwise") (emphasis added); see also *Green*, 2009 WL 1161576, at *11. Like the plan administrator, I am not permitted to look beyond the terms of the domestic relations order when determining whether it is a QDRO.

To be an enforceable QDRO, the requirements of 29 U.S.C. § 1056(d)(3)(C) and (D) must be met, including that the order must "clearly" specify:

---

[1] Although the *Hawkins* court discussed whether an order qualified as a QDRO under the federal tax code, the tax code language is identical to that of ERISA and therefore the case is relevant here. See ECF No. 40 at n.6.

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). In addition, the order can be considered a QDRO "only if" it:

> (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
>
> (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
>
> (iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(3)(D).

According to Jennifer, the March 2015 Order's conditional language fails to clearly specify the amount or percentage of Frank's benefits to be paid by the Plan to Beth, or the manner in which such amount or percentage should be determined, as required by § 1056(d)(3)(C)(ii). The language from the March 2015 Order to which Jennifer refers, states:

> **7. Amount of Alternate Payee's Benefit Based on a "Percentage" of Participant's Accrued Benefit as of the date of divorce:** This Order

>assigns to Alternate Payee an amount equal to 50% of the Participant's Accrued Benefit under the Plan as of November 12, 2010, *so long as Alternate Payee remains unmarried*.

ECF No. 9-8, ¶ 7 (emphasis added).  Jennifer asserts that the amount to be paid to Beth is incalculable and subject to change because the Order's condition on payment requires continual monitoring of Beth's marital status.

Beth suggests the court read the language granting "50% of [Frank's] Accrued Benefit under the Plan as of November 12, 2010, so long as [Beth] remains unmarried," as meaning "so long as [Beth] remains unmarried *as of the date she becomes eligible for benefits*."  Beth asserts that this reading of the March 2015 Order results in none of the continual monitoring objected to by Jennifer, meets all the requirements of a QDRO outlined in § 1056(d)(3)(C) and (D), and executes the state court's express intent that the Order constitute a QDRO.

Beth's suggested reading of the Order language essentially equates to ignoring the "so long as [Beth] remains unmarried" phrase.  Whether a domestic relations order qualifies as a QDRO "depends on the language of the order itself." *Hawkins*, 86 F.3d at 989.  I cannot ignore any language in the March 2015 Order.  Clearly, the plain language of the Order conditions payment on Beth not being remarried.  I agree with Jennifer that this condition on payment could change at any time as long as Beth is alive and competent to marry.  The subject-to-change nature of payment makes the amount to be paid, or manner of calculating the

amount, unspecified. Nor can I reconstruct the Order language or decide how to read or interpret the language based on the intent of the parties.[2] Reading words into the March 2015 Order, as suggested by Beth, would be looking beyond the express language of the Order itself and letting the intent of the parties influence interpretation.

To be an enforceable QDRO under ERISA, an order must *clearly* specify the amount or percentage of the benefits to be paid by the plan to each such alternate payee. 29 U.S.C. § 1056(d)(3)(C)(ii). The language of the March 2015 Order does not meet this requirement because the amount of benefits is uncertain. Only by eliminating the need for continual monitoring of Beth's marital status – such as by limiting Beth to a lump sum payment – will the amount of benefits be clearly specified.

Jennifer also argues that the March 2015 Order's conditional language makes uncertain the number of payments or period to which the Order applies, in violation of § 1056(d)(3)(C)(iii). The Order allows Beth to "elect to receive his/her benefits in any one of the allowable benefit options permitted under the terms and provisions of the Plan, other than a Qualified Joint & Survivor Annuity with his/her current spouse as the beneficiary." ECF No. 9-8, ¶ 8. Jennifer asserts

---

[2] As discussed in my July 14, 2016 Order, I will not look beyond the March 2015 Order to Frank and Beth's intentions when they drafted their Separation Agreement in November 2010. ECF No. 40 at 7-8.

that there are eight Plan benefit options available to Beth but that none of them allow for an adjustment in the number of payments or a discontinuance of payments based on a change in Beth's marital status. Beth responds that the Order's inclusion of an end date ("as of November 12, 2010"), makes clear the period to which the Order applies.

The March 2015 Order allows Beth to choose any benefit option available under the Plan, and the allocation method of her chosen Plan option would determine the number of payments. However, none of the language of the Order can be ignored. The remarriage condition on payment potentially affects the number of payments; the number is subject to change as long as Beth's marital status can change. When the language of the Order is considered as a whole, the number of payments is not controlled solely by Beth's chosen Plan option but also by a possible change in her marital status. As Beth suggests, the Order does specify an end date of November 12, 2010. However, this date only defines the period during which marital benefits accrued – not the period during which the payments should be made. The March 2015 Order does not clearly specify the number of payments to Beth, as required by § 1056(d)(3)(C)(iii).

## Conclusion and Remaining Issues

Failure of the March 2015 Order to meet any single requirement of § 1056(d)(3)(C) is enough to determine that it is not a qualified domestic relations

order under ERISA.  The Order violates two requirements of § 1056(d)(3)(C), therefore, it is unnecessary to discuss Jennifer's arguments concerning the Order's violation of § 1056(d)(3)(D)(i).

The parties agree I have federal subject-matter jurisdiction to determine whether the March 2015 Order is a QDRO under ERISA – which I have now done. However, the Plan's interpleader complaint and Beth's answer to the complaint both request that this court enter an order that is qualified under ERISA.  Although I doubt my authority to do this, the issue is not before me now.  The March 2015 Order, however, contains a provision stating that the Franklin County Circuit Court "shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein," ECF No. 9-8, ¶ 14, so perhaps the state court could still issue such an order.  Counsel for the parties should meet and confer on the next steps for the resolution of this action, and file a joint plan with the court.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Jennifer Laenen's Motion for Order Declaring that the Franklin County Circuit Court's Order Entered March 16, 2015 is not a QDRO [ECF No. 42] is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Beth Laenen's Motion for Judicial Finding that the Franklin County's Order of March 16, 2015 is a QDRO [ECF No. 44] is **DENIED.**

**IT IS FINALLY ORDERED** that counsel for the parties shall meet and confer and file a joint plan within thirty (30) days of the date of this order telling the court what the next steps should be in the resolution of this matter. If the parties cannot agree as to any matter, the disagreement must be set out clearly in the joint proposal.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of February, 2017.